**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

BRANDON MILTON,

      Movant,

v.

                                      Cv. No. 2:18-cv-02888-SHM-tmp
                                       Cr. No. 2:15-cr-20141-SHM-06

UNITED STATES OF AMERICA,

      Respondent.

**ORDER DENYING & DISMISSING MOTION PURSUANT TO 28 U.S.C. § 2255
ORDER DENYING PENDING MOTIONS AS MOOT
ORDER DENYING CERTIFICATE OF APPEALABILITY
ORDER CERTIFYING APPEAL NOT TAKEN IN GOOD FAITH
AND
ORDER DENYING LEAVE TO PROCEED *IN FORMA PAUPERIS* ON APPEAL**

Before the Court are the Motion Under 28 U.S.C. § 2255 to Vacate, Set Aside, or Correct Sentence by a Person in Federal Custody ("§ 2255 Motion") filed by Movant, Brandon Milton, Bureau of Prisons ("BOP") register number 27671-076, an inmate at the Federal Correctional Institution ("FCI Jesup") in Jesup, Georgia (ECF No. 1), the Response of the United States (ECF No. 13), and Movant's Reply. (ECF No. 15.) For the reasons stated below, Movant's § 2255 Motion is **DENIED**.

I.      **BACKGROUND**

      A.      **Criminal Case No. 2:15-cr-20141-SHM-06**

On June 16, 2016, a federal grand jury returned an eighteen-count second superseding indictment against Milton and four codefendants. (Criminal ("Cr.") ECF No. 241.) Milton was named in sixteen counts of the second superseding indictment. (*Id.*) Milton was charged with nine counts of racketeering activity: aiding and abetting attempted murder, in violation of 18

U.S.C. §§ 1959(a)(5) and 2 (Counts One-Four, Six, Eight, Ten, Twelve, and Fourteen), six counts of aiding and abetting the carrying and use of a firearm during a crime of violence, in violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2 (Counts Five, Seven, Nine, Eleven, Thirteen, and Fifteen), and one count of being an accessory after the fact, in violation of 18 U.S.C. §3 (Count Sixteen).

On February 8, 2017, Milton pled guilty to Counts One-Five and Sixteen pursuant to a written plea agreement.  (Cr. ECF Nos. 348-49, 352.)  The plea agreement provided as follows:

> The Defendant, **Brandon Milton**, by and through his counsel, Sam Perkins, knowingly and voluntarily agrees with the United States, through Edward L. Stanton III, United States Attorney for the Western District of Tennessee, and through Jerry Kitchen, the undersigned Assistant United States Attorney, to enter a plea of guilty to **Counts 1, 2, 3, 4, 5, and 16** of the Second Superseding Indictment charging him with violations of 18 U.S.C. §§ 1959, 924(c) and 3 pursuant to Rule 11(c)(1)(A) and 11(c)(1)(B) of the Federal Rules of Criminal Procedure.

> **Brandon Milton** ("**Milton**") agrees that he is pleading guilty to the aforementioned counts because he is guilty of the charges contained within, as outlined in the attached statement of facts (*See* Attachment A).  In consideration for this plea of guilty, the United States agrees to dismiss the remaining counts at sentencing.

> **Milton** understands that given the facts in the possession of the United States at the time of the writing of this agreement, the United States does not oppose the Defendant receiving acceptance of responsibility credit pursuant to U.S.S.G. § 3E1.1, provided the Defendant continues to demonstrate an affirmative acceptance of responsibility, including acknowledging guilt in open court to the facts as set out in the second superseding indictment.  The Defendant also understands that if the United States receives information between the signing of this agreement and the time of the sentencing that the Defendant has previously engaged in, or if he engages in the future, in conduct inconsistent with the acceptance of responsibility, including but not limited to, participation in any additional criminal activities between now and the time of sentencing, this position could change.  Further, the Defendant understands that whether or not acceptance of responsibility credit pursuant to § 3E1.1 is granted is a matter to be determined by the Court.  Failure of the Court to grant acceptance of responsibility credit is not a basis for the Defendant to withdraw his guilty plea.

**Milton** understands that should it be judged by the United States that the Defendant has committed or attempted to commit any additional crimes or has engaged in any conduct constituting obstruction or impeding justice within the meaning of U.S.S.G. §3C1.1 from the date of the Defendant's signing of this plea agreement to the date of the Defendant's sentencing or if the Defendant attempts to withdraw the plea, the Government will be released from its obligations and would become free to argue for any sentence within the statutory limits.  Such a breach by the Defendant would not release the Defendant from the plea of guilty.

**Milton** understands that neither the United States, nor any law enforcement officer, can or has made any promises or representations as to what the sentence imposed by the Court will be.

**Milton** understands that Title 18, United States Code, Section 3742 gives him the right to appeal the sentence imposed by the Court.  Acknowledging this, the Defendant knowingly and voluntarily waives his right to appeal any sentence imposed by the Court and the manner in which the sentence is determined in exchange for the concessions made in this Plea Agreement.  The waiver in this paragraph does not apply to claims relating to prosecutorial misconduct and ineffective assistance of counsel.

**Milton** understands that any statement made in the course of the plea colloquy may be used against the Defendant in any criminal prosecution.  The Defendant knowingly, intelligently and voluntarily waives any objection based on Federal Rules of Evidence 410.

**Milton** further understands and agrees that the special assessment of $600 is due and payable to the United States District Court Clerk's Office, and the Defendant agrees to provide the United States with evidence of payment immediately prior to sentencing.

**Milton** understands that this writing constitutes the entire Plea Agreement between the Defendant and the United States with respect to the plea of guilty. No additional promises, representations or inducements, other than those referenced in this Plea Agreement, have been made to the Defendant or to the Defendant's attorneys with regard to this plea, and none will be made or entered into unless in writing and signed by all parties.  By signing this agreement, the Defendant affirms that he is satisfied with his lawyer's counsel and representation, and hereby freely and voluntarily enters into this Plea Agreement.

(Cr. ECF No. 349.)  Milton signed the plea agreement.  (*Id.* at 3.)

The factual basis for the charges underlying Milton's convictions is stated in Attachment

A to the Plea Agreement:

3

The United States would have shown that beginning at a time unknown to the grand jury and continuing through at least June 2014, in the Western District of Tennessee, Milton, was a member of the Gangster Disciples, an enterprise which engaged in, and the activities of which affected, interstate and foreign commerce.

The United States would have introduced evidence that on or about June 21, 2014, Florence Anthony (Anthony), a member of the female faction of the Gangster Disciples known as Sisters of the Struggle got into an altercation with a group of individuals at the Hillview Apartments located in Memphis, Tennessee. Anthony reported the confrontation to her Gangster Disciples chain-of-command. Anthony informed them that she had been jumped. After the incident occurred, Anthony met with Brandon Milton and Britney Wise. Anthony told them that some "Bloods" jumped her and her kids. Based on this information, Wise drove Milton (MILTON) and Anthony to the Hillview Apartments to see if anyone was still there while there Milton fired 3-4 shots at minor victims A.B., A.W., K.W., and C.T.

Dissatisfied with the results, the security team for the Gangster Disciples including Ranito Allen were called to Anthony's residence to plan retaliation. At the meeting, Anthony falsely informed the gang members that a rival gang had attacked her. On orders from Edwin Carvin, Robert Mallory obtained weapons that he subsequently distributed to Carvin, Coburn, Reese and Allen. Prior to executing the plan, Mallory drove Anthony and Eric Reese to the Hillview apartments so Anthony could show them where the rival gang members lived. Upon return, Allen, Mallory, Carvin, Reese, and Coburn armed themselves to retaliate. At on or around 10:30, they drove to the Hillview apartments, in search of rival gang members they believed had assaulted Anthony earlier in the day. These five men drove to the complex with the intent of avenging Anthony and killing those responsible. When they pulled into the apartment complex, Mallory jumped from the vehicle and started shooting. Allen, Coburn, Reese and Carvin also jumped from the vehicle; the group fired shots at the victims as they scattered for cover. The gang members ran back to the vehicle and attempted to flee. However, within moments the police attempted a traffic stop, whereupon the five males abandoned the vehicle and fled on foot. Some ran to fellow gang member, Brandon MILTON's apartment to hide from the police. Coburn was arrested on the scene. Allen hid in a ditch until the area was cleared and then called someone to pick him up. He

> dropped his weapon, but returned the next day to retrieve it. Several firearms were recovered in and around the abandoned vehicle including a Llama .45 cal pistol, a Norinco Mak-90 rifle, and a Rossi .357 Magnum.  When police officers responded to the scene they discovered at least five victims had been shot, four of whom were juveniles.  All five survived, and some of the victims sustained serious bodily injuries.  MILTON participated in the shooting to maintain his position in the gang.
>
> Finally, the United States would have shown that this occurred in the Western District of Tennessee.
>
> This statement of facts is provided to assist the Court in determining whether a factual basis exists for the Defendant's plea of guilty.  The statement of fact does not contain each and every fact known to the Defendant and to the United States concerning the Defendant's and/or others' conduct or other matters.

(ECF No. 354 at 6-7.)

The Presentence Report ("PSR") calculated a criminal history score of four, a criminal history category of III, and a total offense level of 34, resulting in an effective Guidelines range of 188-235 months in prison for Counts One-Four and Sixteen, and a consecutive 120 months in prison for Count Five.  (Cr. ECF No. 397, PSR ¶¶ 108-09, 96, 138.)  Milton "was interviewed by the probation officer and stated that with respect to the individuals referenced in counts one through five, he shot in the air on June 21, 2014.  With respect to count 16, the defendant stated that he allowed other involved persons to stay at his house.  The defendant stated that he never meant to hurt anyone.  He regrets doing this.  He has never done 'time' like this and it has taught him a lesson.  After this, he will never get in trouble again.  All he wants is a chance to see his children grow up."  (*Id.*, PSR ¶ 56.)

Milton filed a sentencing memorandum acknowledging that the criminal history was correctly calculated but, because he believed it overstated the seriousness of past criminal conduct and propensity to commit any further crimes, suggesting it provided a basis for a

5

downward variance.  (Cr. ECF No. 404 at 4., Cr. ECF No. 456 at 4.)  On June 1, 2017, the Court

conducted a sentencing hearing, accepted the PSR's findings of fact and calculations, and

imposed a below guidelines sentence of 262 months in prison.  (Cr. ECF No. 456 at 4-5, 53-54.)

Milton appealed.  (Cr. ECF No. 423.)

The appellate opinion of the United States Court of Appeals for the Sixth Circuit

analyzed the validity of Milton's plea and scope of the appellate waiver:

> Brandon Milton appeals his judgment in a criminal case for aiding and
> abetting racketeering activity, aiding and abetting the use and carrying of a
> firearm during a crime of violence, and being an accessory after the fact to violent
> crimes in aid of racketeering.  The government moves to dismiss his appeal based
> on an appellate-waiver provision in his written plea agreement.  Milton opposes
> dismissal, arguing that his appeal falls outside the scope of his waiver because the
> district court imposed an arbitrary sentence by failing to grant him a downward
> variance.
>
> A defendant may waive any right, including a constitutional right, in a
> plea agreement if the waiver is knowingly and voluntarily made.  *United States v.
> Toth*, 668 F.3d 374, 377 (6th Cir. 2012).  Nevertheless, a waiver does not bar an
> appeal that attacks the validity of a guilty plea, i.e., that raises a failure to comply
> with Federal Rule of Criminal Procedure 11 or contests the knowing and
> voluntary nature of the waiver.  *See id.* at 377-78.  A waiver also does not bar an
> appeal asserting that a defendant's sentence exceeded the statutory maximum.
> *United States v. Caruthers*, 458 F.3d 459, 472 (6th Cir. 2006).
>
> Milton does not argue that his guilty plea is involuntary or unknowing,
> and a review of his plea colloquy established that the district court fully complied
> with Rule 11.  Instead, relying on *Caruthers*, he argues that, despite his appellate
> waiver, the district court cannot arbitrarily impose his sentence.  That principle,
> however, is based on the "position that an appellate waiver may not bar an appeal
> asserting that the sentence exceeds the statutory maximum."  *Caruthers*, 458 F.3d
> at 471.  The maximum term of imprisonment is 120 months for Milton's
> racketeering offenses, life imprisonment for his firearm offense, and 60 months
> for his accessory-after-the-fact offense.  18 U.S.C. §§ 3, 924(c)(1)(A)(iii) &
> 1959(a)(5), (2).  The district court sentenced Milton at or below each of these
> terms.  Because his sentences do not exceed the statutory maximums for his
> offenses, his appellate-waiver provision is enforceable, and his only issue on
> appeal falls within the scope of his waiver.
>
> The motion to dismiss is **GRANTED**.

(Cr. ECF No. 470 at 2-3.)

**B.   Case Number 2:18-cv-02888-SHM-tmp**

On December 31, 2018, Milton filed this § 2255 Motion alleging that:

> (1)    Appellate counsel provided ineffective assistance by "fail[ing] to brief the petitioner on his Direct Appeal right petitioner never knew about his Direct Appeal counsel until petitioner look in his Docket sheet and find out his Direct Appeal was dismiss[ed] the petitioner Direct Appeal counsel never sent the petitioner his Appellate brief" (ECF No. 1 at 4);

> (2)    Sentencing counsel provided ineffective assistance by "fail[ing] to object or challenge at sentencing about the petitioner prior 4 point Criminal History points All of his prior criminal history Petitioner never did a year of jail time only 30 days Also the petitioner never had any Prior Felony and one of the Criminal History points are at le[ast] 19 years old the petitioner['s] counsel knew that petitioner Guidelines range showed plain error and still fail to object to it Also if petitioner would [have] had effective assistance the petitioner would have received a reasonable sentence  (*id.* at 5); and

> (3)    Movant's § 924(c) conviction is invalid because the definition of "crime of violence" in 18 U.S.C. § 924(c) is unconstitutionally vague.  (*Id.* at 7.)

## II.   STANDARD OF REVIEW

Pursuant to 28 U.S.C. § 2255(a),

> [a] prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

"A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3) an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted).

7

A § 2255 motion is not a substitute for a direct appeal.  *See Bousley v. United States*, 523 U.S. 614, 621 (1998).  "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings."  *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).  "Defendants must assert their claims in the ordinary course of trial and direct appeal."  *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).  This rule is not absolute:

> If claims have been forfeited by virtue of ineffective assistance of counsel, then relief under § 2255 would be available subject to the standard of *Strickland v. Washington*, 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984).  In those rare instances where the defaulted claim is of an error not ordinarily cognizable or constitutional error, but the error is committed in a context that is so positively outrageous as to indicate a "complete miscarriage of justice," it seems to us that what is really being asserted is a violation of due process.

*Id*.

Even constitutional claims that could have been raised on direct appeal, but were not, will be barred by procedural default unless the defendant demonstrates cause and prejudice sufficient to excuse his failure to raise those issues previously.  *El-Nobani v. United States*, 287 F.3d 417, 420 (6th Cir. 2002) (withdrawal of guilty plea); *Peveler v. United States*, 269 F.3d 693, 698-99 (6th Cir. 2001) (new Supreme Court decision issued during pendency of direct appeal); *Phillip v. United States*, 229 F.3d 550, 552 (6th Cir. 2000) (trial errors).  Alternatively, a defendant may obtain review of a procedurally defaulted claim by demonstrating his "actual innocence."  *Bousley*, 523 U.S. at 622.

After a § 2255 motion is filed, it is reviewed by the Court and, "[i]f it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief, the judge must dismiss the motion . . . ."  Rule 4(b), Rules Governing Section 2255 Proceedings for the United States District Courts ("Section 2255 Rules").  "If the motion is not dismissed, the judge must order the United States attorney to file an answer,

motion, or other response within a fixed time, or to take other action the judge may order." *Id.* The movant is entitled to reply to the Government's response. Rule 5(d), Section 2255 Rules. The Court may also direct the parties to provide additional information relating to the motion. Rule 7, Section 2255 Rules.

"In reviewing a § 2255 motion in which a factual dispute arises, 'the habeas court must hold an evidentiary hearing to determine the truth of the petitioner's claims.'" *Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007) (quoting *Turner v. United States*, 183 F.3d 474, 477 (6th Cir. 1999)). "'[N]o hearing is required if the petitioner's allegations cannot be accepted as true because they are contradicted by the record, inherently incredible, or conclusions rather than statements of fact.'" *Id.* (quoting *Arredondo v. United States*, 178 F.3d 778, 782 (6th Cir. 1999)). Where the judge considering the § 2255 motion also presided over the criminal case, the judge may rely on his or her recollection of the prior case. *Blanton v. United States*, 94 F.3d 227, 235 (6th Cir. 1996); *see also Blackledge v. Allison*, 431 U.S. 63, 74 n.4 (1977) ("[A] motion under § 2255 is ordinarily presented to the judge who presided at the original conviction and sentencing of the prisoner. In some cases, the judge's recollection of the events at issue may enable him summarily to dismiss a § 2255 motion . . . ."). Defendant has the burden of proving that he is entitled to relief by a preponderance of the evidence. *Pough v. United States*, 442 F.3d 959, 964 (6th Cir. 2006).

A claim that ineffective assistance of counsel has deprived a defendant of his Sixth Amendment right to counsel is controlled by the standards stated in *Strickland v. Washington*, 466 U.S. 668 (1984). To demonstrate deficient performance by counsel, a petitioner must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 688.

9

> A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. [*Strickland*, 466 U.S.] at 689. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id.*, at 687.

*Harrington v. Richter*, 562 U.S. 86, 104 (2011).

To demonstrate prejudice, a prisoner must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 694.[1] "A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.*

> It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." [*Strickland*, 466 U.S.] at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.*, at 687, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 104; *see also id.* at 111-12 ("In assessing prejudice under *Strickland*, the question is not whether a court can be certain counsel's performance had no effect on the outcome or whether it is possible a reasonable doubt might have been established if counsel acted differently. . . . The likelihood of a different result must be substantial, not just conceivable." (citations omitted)); *Wong v. Belmontes*, 558 U.S. 15, 27 (2009) (per curiam) ("But *Strickland* does not require the State to 'rule out' [a more favorable outcome] to prevail. Rather, *Strickland* places the burden on the defendant, not the State, to show a 'reasonable probability' that the result would have been different." (citing *Strickland*, 466 U.S. at 694)).

---

[1]"[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant." *Strickland*, 466 U.S. at 697. If a reviewing court finds a lack of prejudice, it need not determine whether, in fact, counsel's performance was deficient. *Id.*

"Surmounting *Strickland*'s high bar is never an easy task." *Padilla v. Kentucky*, 559 U.S. 356, 371 (2010).

> An ineffective-assistance claim can function as a way to escape rules of waiver and forfeiture and raise issues not presented at trial, and so the *Strickland* standard must be applied with scrupulous care, lest "intrusive post-trial inquiry" threaten the integrity of the very adversary process the right to counsel is meant to serve. *Strickland*, 466 U.S., at 689-690, 104 S. Ct. 2052. Even under *de novo* review, the standard for judging counsel's representation is a most deferential one. Unlike a later reviewing court, the attorney observed the relevant proceedings, knew of materials outside the record, and interacted with the client, with opposing counsel, and with the judge. It is "all too tempting" to "second-guess counsel's assistance after conviction or adverse sentence." *Id.*, at 689, 104 S. Ct. 2052; *see also Bell v. Cone*, 535 U.S. 685, 702, 122 S. Ct. 1843, 152 L. Ed. 2d 914 (2002); *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 122 L. Ed. 2d 180 (1993). The question is whether an attorney's representation amounted to incompetence under "prevailing professional norms," not whether it deviated from best practices or most common custom. *Strickland*, 466 U.S., at 690, 104 S. Ct. 2052.

*Richter*, 562 U.S. at 105.

## III.   ANALYSIS

Milton has not met the prejudice prong for his claim of ineffective assistance because he does not allege that, "but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59 (1985). He seeks to be resentenced.

### A.   <u>Issue One</u>

Milton alleges that appellate counsel failed to consult with him about issues for the direct appeal or send Milton a copy of the appellate brief. (ECF No. 1 at 4.) The United States responds that Milton's attorney did not perform deficiently. He filed an appeal on Milton's behalf, despite the appellate waiver, contending that Milton's sentence was unreasonable. Any other nonfrivolous issues were waived given that the Sixth Circuit found the appellate-waiver provision was enforceable. (ECF No. 13 at 4-5.)

11

A criminal defendant is entitled to the effective assistance of counsel on direct appeal. *Evitts v. Lucey*, 469 U.S. 387, 396 (1985). The failure to raise a nonfrivolous issue on appeal does not constitute *per se* ineffective assistance of counsel, as "[t]his process of winnowing out weaker arguments on appeal and focusing on those more likely to prevail, far from being evidence of incompetence, is the hallmark of effective appellate advocacy." *Smith v. Murray*, 477 U.S. 527, 536 (1986) (internal quotation marks and citation omitted). Claims of ineffective assistance of appellate counsel are evaluated using the *Strickland* standards. *Smith v. Robbins*, 528 U.S. 259, 285–86 (2000) (applying *Strickland* to claim that appellate counsel rendered ineffective assistance by failing to file a merits brief); *Smith*, 477 U.S. at 535–36 (failure to raise issue on appeal). To establish that appellate counsel was ineffective, a prisoner

> Must first show that his counsel was objectively unreasonable in failing to find arguable issues to appeal – that is, that counsel unreasonably failed to discover nonfrivolous issues and to file a merits brief raising them. If [the prisoner] succeeds in such a showing, he then has the burden of demonstrating prejudice. That is, he must show a reasonable probability that, but for his counsel's unreasonable failure to file a merits brief, he would have prevailed on his appeal.

*Smith,* 528 U.S. at 285 (citation omitted).

The process of winnowing out weaker arguments on appeal is "the hallmark of effective appellate advocacy." *Monzo v. Edwards*, 281 F.3d 568, (6th Cir. 2002). "Generally, only when ignored issues are clearly stronger than those presented, will the presumption of effective assistance of counsel be overcome." *Id.* (quoting *Gray v. Greer*, 800 F.2d 644, 646 (7th Cir. 1986)). Defendant must show that "there is a reasonable probability that inclusion of the issue would have changed the result of the appeal." *McFarland v. Yukins*, 356 F.3d 688, 699 (6th Cir. 2004).

Counsel filed an appeal contending that Milton's sentence was arbitrarily imposed and that this issue fell outside the appellate-waiver provision of the plea agreement. (Cr. ECF No.

470 at 2-3.)  The Sixth Circuit Court of Appeals held that the issue fell within the waiver because Milton's sentences did not exceed the statutory maximums for his offenses.  (*Id.* at 3.)  The Sixth Circuit enforced the waiver and dismissed the appeal.  (*Id.*)

Milton has failed to articulate any issue that he desired to discuss with counsel before or during the appellate proceedings.  Milton has failed to demonstrate that a meritorious issue fell outside the appellate-waiver provision.  Milton has not shown that counsel ignored issues that were clearly stronger than the issue counsel chose to raise.  Milton has not demonstrated a reasonable probability that the inclusion of any other issue would have changed the result of the direct appeal.  Milton has failed to demonstrate that counsel performed deficiently and has not demonstrated that he was prejudiced. Issue One is **DENIED**.

B.   **Issue Two**

Milton contends that sentencing counsel's failure to challenge Milton's criminal history resulted in an unreasonable sentence. (ECF No. 1 at 5).  Milton alleges that he "never did a year of jail time only 30 days", he "never had any prior felony", and "one of the Criminal History points are at less 19 years old".  (ECF No. 1 at 5.)  The United States responds that this claim is contradicted by the record and that Milton's history was properly calculated.  (ECF No. 13 at 5.)

United States Sentencing Guidelines ("U.S.S.G.") § 4A1.1 provides that three points are ascribed to each prior sentence of imprisonment exceeding one year and one month; two points to each prior sentence of imprisonment of at least 60 days; and one point to any prior sentence not previously counted up to a total of four points.  The term prior sentence is defined as "any sentence previously imposed upon adjudication of guilt, whether by guilty plea, trial or plea of nolo contendere, for conduct not part of the instant offense."  U.S.S.G. § 4A1.2(a)(1).

Milton's criminal history score was based on the following convictions:

13

A September 12, 2005 conviction for no driver's license, reckless driving, possession of a controlled substance where he was sentenced to five days in custody (Cr. ECF No. 397, PSR ¶ 99);

A March 11, 2010 conviction for possession of marijuana where he was sentenced to four days in custody (*id.* at ¶102);

A November 15, 2011 conviction for unlawful possession of a weapon where he was sentenced to twelve days in custody (*id.* at ¶ 104); and

A July 10, 2012 conviction for unlawful possession of a weapon where he was sentenced to eleven months, twenty-seven days in custody suspended, eleven months, twenty-seven days probation. Probation was revoked on November 5, 2013 and he was sentenced to thirty days in custody. (*Id.* at ¶ 105).

One point was assessed for each conviction under U.S.S.G. § 4A1.1. (*Id.*) Contrary to Milton's argument, "criminal history points are based on the sentence pronounced, not the length of time actually served." *See* U.S.S.G. § 4A1.2(b)(1) and (2). "A sentence of probation is to be treated as a sentence under §4A1.1(c) unless a condition of probation requiring imprisonment of at least sixty days was imposed." (*Id.* Commentary, Application Note 2)

After reviewing and discussing the PSR, Milton and his attorney made a strategic decision to acknowledge that the criminal history calculation was correctly calculated, but to request a downward variance, contending that it overrepresented the seriousness of past criminal conduct and overstated the propensity to commit further crimes. (Cr. ECF No. 404 at 4, Cr. ECF No. 456 at 3-4.) The strategy was successful. The Court agreed. granted a one-level downward variance, and imposed a below guidelines sentence of 262 months in prison. (*Id.* at 20-31, 45-66.)

Milton has not presented any fact or document that should have been argued or presented before or during sentencing. Milton has failed to establish a reasonable probability that, if his attorney had taken any different action, Milton would have received a lower sentence. Milton

has failed to demonstrate deficient performance or prejudice.  Issue Two is without merit and is **DENIED**.

      **C.**    <u>**Issue Three**</u>

      Milton alleges that his § 924(c) conviction is invalid because the definition of "crime of violence" in 18 U.S.C. § 924(c) is unconstitutionally vague.  (ECF No. 1 at 7.)  The United States responds that the predicate offense for Milton's § 924(c) conviction – attempted murder in violation of Tenn. Code Ann. § 39-13-210 and 18 U.S.C. §§ 1959(a)(5) and 2 – is a crime of violence under § 924(c)(3)(A) because the attempted use of physical force is an element.  (ECF No. 13 at 7.)

      Under 18 U.S.C. § 924(c)(1)(A)(iii), "any person who, during and in relation to any crime of violence . . . uses or carries a firearm, or who in furtherance of any such crime, possesses a firearm," shall, in addition to the punishment imposed for that crime of violence, if the firearm was discharged, receive a consecutive sentence of not less than ten years.  18 U.S.C. § 924(c)(1)(A), (D).  Section 924(c)(3) defines "crime of violence" as any felony that:

> (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another (the "use-of-force clause"), or
>
> (B) that by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense (the "residual clause").

18 U.S.C. § 924(c)(3)(A)-(B).  The two subparts of the definition of a crime of violence under § 924(c)(3) are referred to as the "elements clause," § 924(c)(3)(A), and the "residual clause," § 924(c)(3)(B).

      After Milton had pled guilty, the Supreme Court held that the residual clause at 18 U.S.C. § 924(c)(3)(B) is unconstitutionally vague, leaving the elements clause intact.  *United States v.*

*Davis*, 139 S. Ct. 2319, 2325-27, 2336 (2019) (citing *Sessions v. Dimaya* and *Johnson v. United States*). *Davis* did not disturb the definition of "crime of violence" in § 924(c)(3)(A). The predicate offense for Milton's § 924(c) conviction, attempted murder, in violation of Tenn. Code Ann. § 39-13-201 and 18 U.S.C. §§ 1959(a)(5) and 2 (Cr. ECF No. 241), is a crime of violence under § 924(c)(3)(A) because it has as an element the attempted use of physical force.

Congress has expressed a clear intent that § 1959(a) offenses are crimes of violence. In *United States v. Taylor*, 495 U.S. 575 (1990), the Supreme Court held that, where Congress has not indicated how a prior offense used to enhance a defendant's sentence is to be interpreted, it should be understood to refer to "the generic, contemporary meaning" of the crime. *Id.* at 598 (interpreting "burglary" as used in the Armed Career Criminal Act ("ACCA"), 18 U.S.C. § 924(e)). Under this approach (known as the categorical approach), the court must compare the elements of the generic offense to "the statutory definition[ ] of the prior offense[]." *Id.* at 599-600; *Mathis v. United States*, 136 S. Ct. 2243, 2248 (2016) (citing *Taylor*). Because the text and structure of § 1959 are clear, there is no need to apply the *Taylor* categorical approach. Congress intended § 1959 offenses to encompass "crimes of violence." Specifically, 18 U.S.C. ch. 95 lists a number of crimes in aid of racketeering with § 1959 containing "violent crimes in aid of racketeering activity" ("VICAR"). Congress has classified the listed offenses as "crimes of violence". *See also United States v. McCollum*, 885 F.3d 300, 311 (4th Cir. 2018) (Wilkinson, J. dissenting) (arguing that when a provision's meaning "is already patently clear from its text, structure, and context, there is no need to rely on the *Taylor* framework". Because VICAR offenses are to be interpreted a violent crimes, no further inquiry is necessary. Issue Three is without merit and is **DENIED**.

IV.    CONCLUSION

16

The Motion, together with the files and record in this case "conclusively show that the prisoner is entitled to no relief."  28 U.S.C. § 2255(b).  Movant's conviction and sentence are valid.  His motion is **DENIED**.  Judgment shall be entered for the United States.  All pending motions in this case are **DENIED** as **MOOT**.

## V.      APPELLATE ISSUES

Pursuant to 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability ("COA") "only if the applicant has made a substantial showing of the denial of a constitutional right."  28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b).  No § 2255 movant may appeal without this certificate.  The COA must indicate the specific issue or issues that satisfy the required showing.  28 U.S.C. § 2253(c)(2), (3).  A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same).  A COA does not require a showing that the appeal will succeed.  *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15 (6th Cir. 2011).  Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (quoting *Miller-El*, 537 U.S. at 337).  In this case, for the reasons previously stated, Movant's claims lack substantive merit and, therefore, he cannot present a question of some substance about which reasonable jurists could differ.  The Court **DENIES** a certificate of appealability.

The Sixth Circuit has held that the Prison Litigation Reform Act of 1995, 28 U.S.C. § 1915(a)-(b), does not apply to appeals of orders denying § 2255 motions. *Kincade v. Sparkman*, 117 F.3d 949, 951 (6th Cir. 1997). Rather, to appeal *in forma pauperis* in a § 2255 case, and thereby avoid the appellate filing fee required by 28 U.S.C. §§ 1913 and 1917, the prisoner must obtain pauper status pursuant to Fed. R. App. P. 24(a). *Kincade*, 117 F.3d at 952. Rule 24(a) provides that a party seeking pauper status on appeal must first file a motion in the district court, along with a supporting affidavit. Fed. R. App. P. 24(a)(1). However, Rule 24(a) also provides that if the district court certifies that an appeal would not be taken in good faith, or otherwise denies leave to appeal *in forma pauperis*, the prisoner must file his motion to proceed *in forma pauperis* in the appellate court. *See* Fed. R. App. P. 24(a) (4)-(5).

In this case, for the same reasons the Court denies a certificate of appealability, the Court determines that any appeal would not be taken in good faith. It is therefore CERTIFIED, pursuant to Fed. R. App. P. 24(a), that any appeal in this matter would not be taken in good faith, and leave to appeal *in forma pauperis* is DENIED. If Defendant files a notice of appeal, he must also pay the full $505 appellate filing fee (*see* 28 U.S.C. §§ 1913, 1917) or file a motion to proceed *in forma pauperis* and supporting affidavit in the Sixth Circuit Court of Appeals within thirty (30) days (*see* Fed. R. App. P. 24(a) (4)-(5)).

**IT IS SO ORDERED,** this 21st day of January 2022.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE